THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

U.S. BANK                               :
                                        :
            Plaintiff                   :
                                        :
    v.                                  :   3:08-CV-1504
                                        :   (JUDGE MARIANI)
ANTONIO MONTALVO, SR., et al.,          :
                                        :
            Defendants                  :

## MEMORANDUM ORDER

### I. Introduction and Jurisdiction

Before the Court is Plaintiff's Motion for Summary Judgment in this mortgage foreclosure action against Antonio Montalvo, Sr. ("Senior") and his son ("Junior"). (Doc. 39). For the reasons set forth below, the Court will defer ruling on Plaintiff's motion and order Defendants[1] to supplement the record with documentary evidence of any pending or current loan modification agreements in place.

This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332(a)(1), and venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(a).

### II. Statement of Undisputed Facts[2]

---

[1] Throughout the course of this case, Defendant Senior has not participated by filing an Answer or a Brief in Opposition to Plaintiff's pleadings or motions.

[2] In responding to Plaintiff's Motion for Summary Judgment, Defendant Junior failed to comply with the Local Rules, which state in pertinent part:

> [t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required [from the moving party], as to which it is contended that there exists a genuine issue to be tried. . . . All material facts set forth in the statement required to be served

On June 30, 2003, Defendant Senior borrowed the principal sum of $223,250.00 from The CIT Group/Consumer Finance, Inc., as memorialized in a promissory note ("Note"). (*See* Copy of Note, Doc. 39, Ex. A). To secure the Note, both defendants executed a mortgage on real property located at 1 Devonshire Lane a/k/a Lot 49, Section 4A, Mount Pocono, PA 18344 ("Mortgaged Property"), which was duly recorded in the Office of the Recorder of Deeds of Monroe County that same day. (*See* Doc. 39, Ex. B).

The CIT Group/Consumer Finance, Inc. eventually assigned the Mortgage to Plaintiff, U.S. Bank, and the Assignment of Mortgage was duly recorded in the Office of the Recorder of Deeds in Monroe County on July 21, 2008. (*See* Assignment of Mortgage, Doc. 39, Ex. C). After the assignment, Defendants defaulted under the Note and Mortgage by failing to make the necessary payments, and as of this date, have not cured the default. (*See* Motlow Aff., Doc. 39, Ex. D, at ¶ 12). On June 26, 2008, Defendant Junior was sent a Notice of Homeowner Emergency Assistance in accordance with 35 P.S. § 1680.402c, *et seq.* (Doc. 1, Ex. B).

Defendants having failed to pay the sum due under the Note and Mortgage, Plaintiff initiated this present mortgage foreclosure action. (Doc. 1). As of July 31, 2013, $384,702.80 is due under the Note and Mortgage, including principal, interest, late charges, escrow advances, and other fees. (*See* Ex. D, ¶ 11).

---

by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

Local Rule 56.1. Though the defendants, who are proceeding *pro se*, did not file a separate Statement of Facts, the Court will not deem all of Plaintiff's proposed Statement of Undisputed Facts admitted on that basis alone.

## III. Analysis

### Standard for Summary Judgment

Through summary adjudication, the court may dispose of those claims that do not present a "genuine issue as to any material fact." FED. R. CIV. P. 56(a). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir.1990). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*,

974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

## Nature of Action

As a preliminary matter, the Court will first discuss the nature of this action. Defendant Junior appears to be under the perception that this is both a mortgage foreclosure action and a breach of contract action on the underlying promissory note. Under Pennsylvania law,

> [a]n action in mortgage foreclosure is strictly an *in rem* action and may not include an *in personam* action to enforce personal liability. PA. R.C.P. 1141. The sole purpose of a judgment obtained through mortgage foreclosure is to effect a judicial sale of the mortgaged real estate, *Meco Realty Company v. Burns*, 414 Pa. 495, 200 A.2d 869 (1964), and the judgment obtained in a mortgage foreclosure action is only *in rem*. *First Seneca Bank v. Greenville Distributing Co.*, 367 Pa. Super. 558, 533 A.2d 157 (1987). However, where a mortgagee fails to follow PA. R.C.P. 1141 and includes in a mortgage foreclosure complaint a request not only for an *in rem* judgment of foreclosure on the mortgaged property but also an *in personam* judgment against the individuals who executed the mortgage for their personal liability on the note or bond accompanying the mortgage, the judgment in mortgage foreclosure can be both *in rem* and *in personam* provided that the mortgagor waives any objection to the inclusion of the assumpsit action for a personal judgment in the mortgage foreclosure proceeding. *Kretschman v. Stoll*, 238 Pa. Super. 51, 352 A.2d 439 (1975).

. . .

> Considering that Insilco takes the position that only an *in rem* judgment could be obtained in an action for mortgage foreclosure, and that under the rules of Civil Procedure a mortgage foreclosure complaint can only include a cause of action *in rem*, considering that the complaint recites that the only notice given was to seek a mortgage foreclosure, considering that the complaint recites only that the terms of the mortgage, and not the bond, have been breached, considering that the terms of the bond are not recited in or attached to the

4

complaint, and considering that the prayer for relief does not request judgment on the bond but simply requests judgment against the Rayburns in an amount equal to the amount due pursuant to the terms of the mortgage, we hold that the summary judgment which was granted is only an in rem judgment, and does not constitute a personal judgment against the Rayburns on the bond.

*Insilco Corp. v. Rayburn*, 543 A.2d 120, 123, 125 (Pa. Super. Ct. 1988).

In this action, the Complaint clearly states that the case is a "Mortgage Foreclosure" action. (*See* Title Page, Doc. 1). The caption of the Complaint named as defendants both Senior, Junior, and the Mortgaged Property itself. The sole count of the Complaint is for "Mortgage Foreclosure," and Plaintiff alleges that "[b]y virtue of the default of the defendants under the subject Mortgage obligation, Plaintiff is entitled to the entry of an *in rem* judgment against defendants in foreclosure of the Mortgage for the total amounts due and owing as set forth herein." (*Id.* at ¶ 14). Finally, the relief sought is "an *in rem* Judgment against the Defendants . . . collectible under the mortgage and for the foreclosure and sale of the mortgaged property." (*Id.* at 7). Similarly, Plaintiff's Motion for Summary Judgment asks this Court to "enter judgment of Mortgage Foreclosure *in rem* in its favor and against [Defendants], jointly and severally, in the amount of $384,702.80, authorizing sale of the mortgaged property," and other expenses, interest, fees, and costs. (Doc. 39, at 5).

Therefore, while Defendant Junior correctly points out that the Assignment from The CIT Group/Consumer Finance, Inc. endorsed only the Mortgage and not the Note (Defs' Br. in Opp., Doc. 42, at ¶ 7), because Plaintiff is seeking a remedy on the Mortgage only, his

5

argument is irrelevant.[3] Moreover, Defendant Junior was not a signatory to the Note, but the Mortgage only. Therefore, Plaintiff could not have brought an *in personam* action against Defendant Junior based on any alleged failures to pay obligations due under the Note.

## Whether Plaintiff is Entitled to Summary Judgment

Having eliminated any possible confusion about the nature of this action, the Court will address the merits of Plaintiff's motion. "In an action for mortgage foreclosure, the entry of summary judgment is proper if the mortgagors admit that the mortgage is in default, that they have failed to pay interest on the obligation, and that the recorded mortgage is in the specified amount." *Cunningham v. McWilliams*, 714 A.2d 1054, 1057 (Pa. Super. Ct. 1998) (citing *Landau v. W. Pennsylvania Nat'l Bank*, 282 A.2d 335, 340 (Pa. 1971)). "This is so even if the mortgagors have not admitted the total amount of the indebtedness in their pleadings." *Id.*

To prove Defendants' default under the Mortgage, Plaintiff provided the affidavit of Timeka Motlow, who swears that she is a Contract Management Coordinator of Ocwen Loan Servicing, Inc., the entity which is "responsible for servicing Defendant's delinquent

---

[3] As such, Defendant Junior's further argument that the Note attached to Plaintiff's Motion is stamped as "COPY" instead of "ORIGINAL" is irrelevant. (Defs' Br. in Opp., Doc. 42, at ¶¶ 9-10). Even if this were a breach of contract action on the promissory note, Plaintiff's attachment of a copy would not defeat its motion, as courts routinely accept copies of documents in lieu of the originals where the copy's authenticity is not at issue. "A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." FED. R. EVID. 1003; *see also United States v. Lnu*, 575 F.3d 298, 304, n.5 (3d Cir. 2009) ("The Federal Rules of Evidence are . . . accepting of the use of duplicates at trial."); *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 929, n.22 (3d Cir. 1985) ("So long as the original is indeed plaintiff's Sea Service Records, we perceive no unfairness in using the duplicate.").

mortgage account as servicer for Plaintiff." (Doc. 39, Ex. D, ¶ 1). In her affidavit, Ms. Motlow states that:

> [b]ased on my review of the payment history on this loan, and after allowing all just credits, offsets and rebates, there is now due and owing unto U.S. Bank, N.A., . . . the sum of $384,702.80, with interest at the rate of 12.875% from March 30, 2008, together with a reasonable Attorney's fee, title search costs, advances for taxes, insurance and property preservation, and costs of this action.
>
> . . .
>
> The records further reveal that there has been a default in the note and mortgage, and that sufficient and certified moneys to cure the default have not been tendered, nor have there been any extensions, modifications or agreements between the parties to delay this foreclosure action. Based on my review of the payment history, payment has not been made as provided in the Note and Mortgage since the payment due April 30, 2008.

(*Id.* at ¶¶ 10, 12). "Defendant has entered in several Loss Mitigation programs with Plaintiff, but has failed to complete any of the agreements. There is no current agreement pending with Defendant." (*Id.* at ¶ 14).

Defendant Junior has denied that the Mortgage is in default (*see generally* Ans., Doc. 16), but he has not produced any evidence to the contrary. Instead, he argues that the Court cannot rely on the affidavit of Ms. Motlow, who has no "personal knowledge of the facts other than the practices and procedures of Ocwen Loan Servicing, Inc. Any and all representations of the affiant concerning the mortgage . . . are based upon sources that are not within personal knowledge, and would, at trial be objectionable as hearsay." (Defs' Br. in Opp., Doc. 42, at ¶ 3).

7

Despite Defendant Junior's arguments, the Motlow Affidavit serves as a business record exception to the hearsay rule under FED. R. EVID. 803(6) which says:

A record of an act, event, condition, opinion, or diagnosis [is admissible] if:

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Motlow does not appear to be the custodian of records at Ocwen, but Rule 803(6) does not require her to be. "Another qualified witness" may provide foundation testimony as to the authenticity and accuracy of the document at issue. "Furthermore, the phrase 'other qualified witness' should be given the broadest interpretation; . . ." a witness will be qualified as "long as he understands the [record-keeping] system." *United States. v. Pelullo*, 964 F.2d 193, 201 (3d Cir. 1992). In certain instances, "the requirements for qualification as a business record can be met by documentary evidence, affidavits, or admissions of the parties, *i.e.*, by circumstantial evidence, or by a combination of direct and circumstantial evidence." *Id.* "Thus, a qualified witness only need have familiarity with the record-keeping

system and the ability to attest to the foundational requirements of Rule 803(6)." *United States v. Console*, 13 F.3d 641, 657 (3d Cir. 1993). Nevertheless,

> [w]hile a noncustodial witness . . . may be used to lay the foundation required by Rule 803(6), that witness or those documents must still demonstrate that the records were made contemporaneously with the act the documents purport to record by someone with knowledge of the subject matter, that they were made in the regular course of business, and that such records were regularly kept by the business.

*Pelullo*, 964 F.2d at 201. Ms. Motlow states in her affidavit that "[t]hrough the regular performance of my job functions, I have personal knowledge of Ocwen's business practices and procedures and am familiar with both the business records regularly prepared and maintained by Ocwen. . . ." (Doc. 39, Ex. D, at ¶ 2). "These records (which include data compilations, electronically imaged documents, and others) are made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and are kept in the ordinary course of the business activity regularly conducted by Ocwen." (*Id.* at ¶ 3). She then states that "[i]t is the regular practice of Ocwen's mortgage servicing business to make and update these records, *and I have examined the relevant records personally in connection with making this affidavit.*" (*Id.* at ¶ 4) (emphasis added). The Court is satisfied that Ms. Motlow has sufficient personal knowledge of the record-keeping processes and procedures at Ocwen to provide an accurate affidavit as evidence to the Court. As such, the Court will credit her testimony that Defendants have defaulted on the Mortgage.

Thus, the Court concludes that Plaintiff's predecessor-in-interest formed a valid mortgage agreement with Defendants (Doc. 39, Ex. B), Plaintiff was assigned the Mortgage (Doc. 39, Ex. C), and Defendants defaulted on the Mortgage (Doc. 39, Ex. D), thereby entitling Plaintiff to foreclosure on the Mortgage.

## Whether Defendants are Entitled to a Stay

Defendant Junior pleaded in his Answer that after receiving the "Act 91 Notice, he applied for the Homeowner's Emergency Assistance Program and submitted a loan modification application to Ocwen Loan Servicing."[4] (Ans., Doc. 16, at ¶ 26). As of the date of the Answer, that "loan modification application is pending." (Id. at ¶ 27). According to Defendant Junior, when he "timely filed a loan modification application with Ocwen Loan Services," the "mortgage foreclosure complaint is stayed by operation of law" under Pennsylvania's Homeowner's Emergency Assistance Program. (Id. at ¶¶ 29, 30).

Defendant Junior also pled that he "applied for the federal government Department of Treasury Home Affordable Refinance Program and submitted a loan modification application to Ocwen Loan Servicing." (Id. at ¶ 32). Defendant Junior's "timely filing of a loan modification applications stays foreclosure proceedings." (Id. at ¶¶ 34, 36).

---

[4] Despite Defendant Junior's argument that "Ocwen Loan Servicing, Inc. is an absolute stranger to this case. They are not a named party." (Defs.' Br. in Opp., Doc. 42, at ¶ 4), he acknowledges that he has had prior interactions with Ocwen in his Answer, and the Assignment of Mortgage indicates that the signatory to the agreement with The CIT Group/Consumer Finance, Inc. was Denise Marvel, the Manager of Document Control and Contract Management with Ocwen. (See Assignment of Mortgage, Doc. 39, Ex. C).

10

Defendant Junior, however, attached no documentation to his opposition to Plaintiff's Motion for Summary Judgment.[5] The Court has no evidence of any pending loan modification agreements under either Pennsylvania's Homeowner's Emergency Mortgage Assistance Program ("HEMAP") or the federal Home Affordable Modification Program ("HAMP"). The Act 91 Notice that Defendants received provides that

> Under [Act 91], you are entitled to a temporary stay of foreclosure on your mortgage for thirty (30) days from the date of this Notice. During that time you must arrange and attend a "face-to-face" meeting with one of the consumer credit counseling agencies listed at the end of this Notice. THIS MEETING MUST OCCUR WITHIN THIRTY (30) DAYS. IF YOU DO NOT APPLY FOR EMERGENCY MORTGAGE ASSISTANCE, YOU MUST BRING YOUR MORTGAGE UP TO DATE.
>
> . . .
>
> The Pennsylvania Housing Finance Agency has sixty (60) days to make a decision after it receives your application. During that time, no foreclosure proceedings will be pursued against you if you have met the time requirements set forth above. You will be notified directly by the Pennsylvania Housing Finance Agency of its decision on your application.

(June 26, 2008 Act 91 Notice, Doc. 1, Ex. B).

Furthermore, HAMP Guidelines provide that "[a]ny foreclosure action will be temporarily suspended during the trial period, or while borrowers are considered for alternative foreclosure prevention options. In the event that the Home Affordable Modification or alternative foreclosure prevention options fail, the foreclosure action may be resumed." U.S. Dep't of the Treasury, Home Affordable Modification Program Guidelines

---

[5] Neither did Defendant Junior raise these affirmative defenses in his opposition to Plaintiff's motion. Nonetheless, the Court will not find waiver of these defenses.

11

(Mar. 4, 2009), available at http://www.treasury.gov/press-center/press-releases/documents/modification_program_guidelines.pdf.[6]

Defendant Junior acknowledges having received the Act 91 Notice dated June 26, 2008 (Ans. at ¶ 12), and as of the date of his Answer on September 14, 2009, he pled that his loan modification application was pending with the Pennsylvania Housing Finance Agency and with HAMP. (*Id.* at ¶¶ 27, 33). Unless the loan modification applications were approved or alternative arrangements made, though, any stay on foreclosure proceeding must have lapsed long since.

Nevertheless, because Defendants are proceeding *pro se*, the Court will decline to hold their failures to follow the Local Rules against them. Instead, out of an abundance of caution, the Court will direct Defendants to provide the Court with documentary evidence of any pending or current loan modification agreements in place.

## IV. Conclusion

For the foregoing reasons, the Court will defer ruling on Plaintiff's motion and order Defendants to supplement the record with documentary evidence of any pending or current loan modification agreements in place. A separate Order follows.

---

[6] To further the goals of the Emergency Economic Stabilization Act of 2008 ("the Act"), Pub. L. No. 110–343, 122 Stat. 3765 (codified as amended at 12 U.S.C. § 5201, *et seq.*),

> on March 4, 2009, the Treasury Department created the Home Affordable Modification Program ("HAMP"). The aim of HAMP was to assist homeowners on the verge of foreclosure to modify their loans to an affordable level. The government offered financial incentives to mortgage servicers who agreed to such modifications on behalf of the mortgage holders. HAMP was scheduled to expire at the end of 2012. HAMP has since been extended to December 31, 2013.

*Loan Modification Grp., Inc. v. Reed*, 694 F.3d 145, 147, n.1 (1st Cir. 2012).

Robert D. Mariani
United States District Judge